.Williams, Judge,
delivered the opinion:
The plaintiff, a Massachusetts corporation, on August-29, 1917, entered into a contract with Colonel G. S. Bing-ham, of the Quartermaster Corps, of the U. S. Army, a duly authorized agent of the United States, whereby the-plaintiff agreed to purchase and remove the waste matter of every kind, except rags and bags, from Camp Devens,. Massachusetts. The obligations imposed by the contract on the respective parties are set out in detail in Finding II,. and will not be repeated here.
The plaintiff brings this suit to recover the sum of $54,-660.00, damages because of the following alleged breaches-of the contract by the defendant:
(1) Failure of the defendant to collect and deliver to-, the plaintiff in separate receptacles the seven kinds of waste-matter named in Article 5 of the contract;
*223 (2) The failure of the defendant to deliver to the plaintiff all waste paper purchased at the camp, which plaintiff was entitled to receive;
(3) Failure of the defendant to deliver to the plaintiff ■all the fats and tallow produced at the kitchens on the camp;
(4) Failure of the defendant to deliver to plaintiff 600 tons of hay which had become unfit for feed for the horses ■and mules at the camp; and
(5) Failure of the defendant to deliver to the plaintiff an •accumulation of old iron, metal, old automobile tires and rims, partly burned automobiles and automobile trucks, iron and wooden barrels, wire, aluminum, etc., which materials the defendant during the period of the contract, and •subsequently, sold as junk.
Glaim for refund of the first three monthly installments paid by plaintiff, $6,4-80. — In the first item of the claim the plaintiff seeks to recover the sum of $6,480, the amount of "the first three months’ installments of $2,160 each, paid by plaintiff under the contract. A refund of these installments is claimed because of the failure of the defendant during the first three months’ period of the contract to collect and deliver in separate receptacles the various classes of waste arising at the camp. At the time the contract period began Camp Devens was still in the course of construction and the defendant had not at that time perfected a sufficient organization to properly collect, separate, and deliver waste matter as it accumulated at the camp. During this period the waste matter, instead of being delivered in separate receptacles in accordance with the provisions of the contract, was delivered in one container. Bones, grease, tallow, garbage, paper, ashes, and other articles were thrown together and •delivered as a mixture. Plaintiff made complaint after complaint about this indiscriminate mixture of the waste material, and while the camp authorities issued orders and posted bulletins directing the separation of the several classes of waste matter, very little improvement was made during the first three months’ period of the contract, and the waste matter delivered was practically without value and had to be disposed of in the main as garbage.
The plaintiff, claiming that it had suffered great loss and damage because of the failure of the defendant to deliver the various articles of waste in accordance with the terms of *224 the contract during this period, protested against being required to pay the said installment payments amounting to $6,480, but finally paid the said amount because of the threat of the defendant that the contract would be canceled if it did not do so. The installment payments were made in compliance with the terms of the contract, and the plaintiff can not recover the amount so paid. Plaintiff, however, would be entitled to recover the amount of damages sustained by it because of this breach of the contract by the defendant if the amount of such damage was shown. While it is very apparent the plaintiff did in fact sustain damages during the first three months’ period, part of which, at least, are not included in the various other items of the claim in suit, the court is not able to determine from the record the amount of such damage. The burden is on the plaintiff, not only to show that it sustained damages but to establish by proof the amount of such damage. The loss accruing to plaintiff because of defendant’s failure to deliver waste paper in separate receptacles during this period is included in the item of its claim next discussed. The amount of plaintiff’s loss-because of the defendant’s failure to make proper delivery of other articles of waste during this period is not satisfactorily shown.
Claim for damages based on failure of defendant to properly separate and deliver nuaste paper. — The plaintiff seeks damages in the sum of $18,000 for failure of the defendant to deliver paper free from garbage, filth, and rubbish, and also because of the failure to deliver to plaintiff paper and magazines which were sold during the period of the contract by the Y. M. C. A., Knights of Columbus, the Salvation Army, and other organizations having headquarters at the camp from which reading matter was distributed to the soldiers.
The plaintiff was entitled to all discarded paper and magazines belonging to the Government or arising from any Government-operated activity at the camp. It did not, however, have a right to the paper and magazines belonging to the various welfare organizations at the camp. The magazines and reading matter which these organizations distributed to the soldiers of the camp were their property. They *225 were entitled to whatever revenue such reading matter might produce when it was no longer used by them and was discarded. The Government did not sell to plaintiff paper or magazines which did not belong to it and therefore is not liable to plaintiff for the value of waste paper sold by these organizations to other purchasers.
The findings show that the paper plaintiff was entitled to receive was not collected and delivered in the manner provided in the contract. The camp authorities, it is true, issued orders directing that the paper be kept as clean as possible and delivered in accordance with the contract provisions, but these orders were largely ineffectual and throughout the life of the contract the paper delivered was so mixed with bottles, bricks, garbage, etc., that it was difficult to bale and practically worthless when baled. At no time during the period of the contract was there even a substantial compliance on the part of the defendant with its contract obligations with respect to the delivery of paper. By reason of this breach of the contract by the defendant, the plaintiff sustained damages in the amount of $6,074.90, which amount it is entitled to recover.
Claim for damages based on failure of the defendant to deliver fats and tallows. — About 300 kitchens were in operation at the camp during the period of the contract. A majority of these kitchens were operated by the Government and were under the direct control and management of the defendant. Quite a number of them, however, including the Y. M. C. A., the Knights of Columbus, twelve officers’ messes, the Hostess House, civilians’ mess, enlisted men’s club, Baldwin’s lunch rooms, and others, were operated by organizations or individuals who bought their own food and employed their own help. The managers of these non-Government-operated kitchens claimed they owned the grease produced therefrom and throughout the period of the contract disposed of such grease or tallow by direct sales to purchasers other than the plaintiff. The plaintiff claims it had a right under the contract to have delivered to it fats and tallows produced from all kitchens on the camp without regard to whether they were operated by the Government or *226 by independent' concerns. Competitiors of the plaintiff visited the camp daily and purchased from the owners or managers of the non-Government-operated kitchens the fats ■and tallow produced by their kitchens. These outside purchasers, also, at times, bought grease and bones from persons in charge of the Government kitchens. The record shows that during the period of the contract there was delivered to these outside purchasers, fats and bones of the value of $11,220.89; $1,781.45 of the aforesaid amount represented the value of grease and bones surreptitiously sold from Government-operated kitchens by agents of the defendant, which amount the defendant concedes plaintiff is entitled to recover.
The question, therefore, for decision as to this item of the plaintiff’s claim, is whether he was entitled under the contract to have delivered to him the greases and bones produced from the non-Government-operated kitchens at the •camp. It seems to us a reasonable construction of the provision in the contract that the plaintiff agrees to purchase and remove the waste matter of every kind and nature, except rags and bags, from Camp Devens would not include waste material not the property of the Government. We have held that the plaintiff is not entitled to recover the value of paper and magazines disposed of by the various welfare and other organizations operating at the camp during the period in question, for the reason that such paper and magazines were the property of those organizations. The same principle is involved in the plaintiff’s claim that it is entitled to the grease and bones produced at the non-Government-operated kitchens. The record shows the Government had nothing to do with the operation of these kitchens. The owners of these kitchens bought their own foods, employed their own help, and received the revenue produced from their operations. In the absence of any agreement between the owners of these kitchens and the Government to the contrary, they owned the bones and grease resulting from the operation of such kitchens and had the right to dispose of them as they saw fit.
Claim based on failure of defendant to deliver damaged bay. — During the period of the contract the defendant *227 bought and stored bay for feed for the horses and mules stationed at the camp. About 600 tons of this hay became mouldy and unfit for feed. The plaintiff claims that when this hay became unfit for use as feed, that being the purpose for which it was procured, it thereby became waste within the terms of the contract and should have been delivered to the plaintiff. The defendant refused to deliver the damaged hay to plaintiff and otherwise disposed of it. After the termination of the contract 200 tons of the damaged hay was sold at auction for the sum of $1,056.00. The damaged hay is shown to have had a value of $10.00 per ton, and the plaintiff seeks in this item of its claim to recover the sum of $6,000. The evidence shows that this hay, although it had become unfit for food for animals, could be and was, in fact, utilized by the defendant for other purposes, such as bedding for animals, filling for soldiers’ mattresses, and for packing, etc.
The plaintiff’s right to recover on this item of its claim depends entirely upon whether or not the damaged hay was “ waste matter ” within the meaning of the contract. Plaintiff contends that “ material which is brought upon the reservation and becomes unfit for use upon the reservation for the purpose for which it was intended becomes waste matter.” Under this definition the 600 tons of damaged hay became waste material and the plaintiff would be entitled to recover its value. We think, however, plaintiff’s definition of the words “ waste matter ” is entirely too broad. The primary definition of “ waste,” given in Webster’s Dictionary, is “ that which is of no value; worthless remnant; refuse.” The Century Dictionary defines it as “ broken, spoiled, useless, or superfluous material; stuff that is left over, or that is unfitted or can not readily be utilized for the purpose for which it was intended; overplus; useless or rejected material.” The Standard Dictionary uses the word “ waste ” as synonymous with “ refuse.” While the abstract dictionary definition of the term “ waste ” is not necessarily controlling and should be considered in connection with the surrounding words used in the contract and the intentions of the parties as to its meaning, it seems clear that any material *228 that the Government could further use in its business and which it had not discarded does not fall within the meaning of the term. “ Waste matter ” within the meaning of the contract embraces materials and articles produced or accumulated by the defendant in the operation of the camp which it no longer desired to use, and had”discarded. Such articles may, and do, have value; but when they are no longer used by the Government and are discarded by it they become waste. The fact that materials have no further value for the purpose for which they were originally intended does not make them “ waste ” if they are still of value to the Government for other purposes and have not been discarded. It would be an unreasonable construction of the term “ waste matter ” to say that hay which the Government had purchased for feed was “ waste matter ” merely because it became unfit for food for animals, although it still had a value of $10.00 per ton and there were many other uses than as feed which the Government could and did make of it. The Government had a right to put the hay to other uses than as feed, and, not having discarded it, had a right to sell what remained at the camp after the termination of the plaintiff’s contract. The plaintiff, therefore, is not entitled to recover on this item of the claim.
Claim based on failure of defendant io¡ deliver old iron, metal, rubber tires, ete. — During the period of the contract a large mass of material, consisting of used and discarded automobile and automobile truck tires and rims, old iron, aluminum, wire, iron and wooden barrels, remnants of automobiles and automobile trucks that had been burned, and other such material was accumulated at the camp. The plaintiff claimed this material was “ waste matter ” within the meaning of the contract and demanded that it be delivered to it as such. The defendant’s officers in charge of the camp maintained the material claimed was not waste and refused to deliver it to plaintiff. During the period of the contract, $5,000 worth of this material was sold as junk to purchasers other than plaintiff. At the termination of the contract a quantity of this accumulated mass of material of the value of $8,000.00 remained at the camp. *229 The defendant refused to deliver what remained to plaintiff on the ground that the material claimed was not waste matter, but was junk which the defendant had a right to retain and dispose of as it saw fit.
The plaintiff’s right to recover upon this item, as in the case of its claim for the damaged hay, turns entirely upon whether the material involved constitutes waste matter within the meaning of the contract. The Judge Advocate General of the Army,' in his opinion of June 10,1919, quoting from former decisions, in which the term “ waste matter ” was construed in contracts similar to the contract in this case, said:
“ Of course anything which the Government, in its business, still had use for, was not £ waste matter ’ within the meaning of these contracts; but scrap or waste, not of the kind excepted in the contract, arising at the camp within the contract period, belonged, in the view of this office, to the contractor, and was not matter to be retained and sold as junk by the Government.”
If the construction of the Judge Advocate General as to the meaning of the words “ waste matter ” be accepted and followed in this case, and we think it a correct and reasonable construction of the term, the plaintiff should recover on this item of its claim. The material claimed also falls fairly ynthin the dictionary definition of waste: “ Broken, spoiled, useless, or superfluous material; stuff that is left over or that is unfitted or can not readily be utilized for the purpose for which it was intended ”; and “ broken or spoiled castings for remelting.” This material had been discarded by the defendant as no longer fitted for use, either for the purposes originally intended or for any other purpose. It was “ broken, spoiled, useless, material.” We think it was “ waste matter ” within the meaning' of the contract and should have been delivered to the plaintiff. The defendant can not withhold from the plaintiff and refuse to deliver to him waste matter he is entitled to receive by designating such material as junk. One of the definitions given in the Standard Dictionary for junk is “ cast off material of any sort that can be put to further use; odds and ends as scrap *230 iron, old bottles, or paper.” Under this definition practically every item, of waste matter arising at the camp was junk — paper, bottles, bones, fat, tallow, cans — are all “ cast off material that can be put to further use,” and except for the fact these articles are named in paragraph 5 of the contract as classes of waste required to be delivered in separate receptacles, the claim that they are not waste matter within the meaning of the contract would be just as tenable as is the defendant’s claim that the materials in question are junk, and not waste. Discarded material or matter arising at the camp during the .contract period, which is clearly “ waste matter ” within the accepted meaning of that term,, may not be retained by the Government and sold as junk merely because such material may also come within the definition of junk.
The plaintiff is therefore entitled to recover the value of this material which was not delivered to it, which the findings show was $13,000.
Defendant's counterclaim, —Under the contract the plaintiff agreed to pay the defendant the sum of $21,600, in ten equal monthly installments of $2,160 each. The plaintiff has paid the defendant the sum of $17,280 of the amount due under the contract, but has not paid the last two installments of $2,160 each, amounting to the sum of $4,320. It is- conceded that this amount, which the Government seeks to recover in its counterclaim, is due the defendant.
The defendant, in its answer, says the plaintiff is not entitled to recover because it breached the contract, in that it sublet the portion of the contract providing for the removal of garbage and manure from the camp, to other parties without the written consent of the Government. We do not think the two contracts, wherein the plaintiff sold the manure and garbage, amounts to a subletting of the contract, or any part of it. The plaintiff remained, at all times, responsible to the Government for the removal of these articles of waste. The parties to whom the waste was sold removed it from the dumps where it was delivered by the Government. When delivered at these dumps, by *231 the Government, it became the property of the plaintiff which it could, dispose of as it chose, being responsible to the Government for its proper and prompt removal from the camp. Moreover if the sale of these articles of waste amounted to a subletting of a portion of the contract, the defendant having permitted the plaintiff to complete its contract has acquiesced in what plaintiff did. This breach of the contract, if it be deemed a breach, and we do not think it was, merely gave the defendant the right to terminate the contract. By permitting the plaintiff to finish the contract the defendant has waived whatever rights it may have had because of the plaintiff’s default.
The plaintiff is entitled to recover the sum of $20,806.35 made up of the following items: Waste paper, $6,074.90; grease, bones, and fats, $1,731.45; and old iron, scrap materials, etc., $13,000.
The defendant is entitled to recover the amount of the counterclaim, $4,320.
Judgment is therefore awarded the plaintiff in the sum of $16,486.35, and is hereby entered in that amount. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.